**FLORIDA BUILDING, INC.**

v.

**STANDARD FIRE INSURANCE COMPANY and Aetna Insurance Company.**

Civ. A. No. 3331.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Aug. 29, 1967.

David W. Robinson, Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, La., for plaintiff.

John I. Moore, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, La., for Standard Fire Ins. Co.

Robert L. Kleinpeter, Kleinpeter & George, Baton Rouge, La., for Aetna Ins. Co.

WEST, District Judge:

Defendants, Standard Fire Insurance Company and Aetna Insurance Company, are the fire and extended coverage insurers of certain buildings owned by plaintiff corporation. On September 9 and 10 of 1965 these buildings were dam-aged by storm, and plaintiff seeks to recover the amount of the damage pursuant to the terms of the policies issued by the defendants. There is no dispute about the fact that defendants did insure the plaintiff's buildings, nor is there any dispute about the fact that the buildings were damaged by storm and that the plaintiff is entitled to recover from the defendants for the amount of damage thus incurred. The dispute involved here is as to the extent of the damage and the amount recoverable therefor.

Plaintiff contends that one of its buildings was a total loss and that hence it is entitled to recover the full face value of the two policies involved, i. e., the sum of $69,000 from each defendant, or a total of $138,000, plus penalty, interest, and attorney fees as provided by law for arbitrary and capricious refusal to pay within sixty days after receipt of proof of loss. Plaintiff also contends that it is entitled to recover actual damages to a smaller building, together with penalty, interest, and attorney fees for arbitrary and capricious refusal on the part of defendants to pay for that loss. Defendants contend, on the other hand, that neither of the buildings were a total loss and that the plaintiff is entitled to recover only the amount of the lowest bid submitted to repair the buildings in question, i. e., the sum of $29,989, and that no penalty or attorney fees should be allowed. After carefully studying the evidence in this case, it is the opinion of this Court that neither of the buildings in question were a total loss as a result of the storm, and that hence the plaintiff is entitled to recover only such amount as is required to restore the buildings to their condition at the time of the loss.

It is further the conclusion of this Court that the plaintiff is not entitled to recover any penalty or attorney fees from the defendant, Standard Fire Insurance Company, but that it is entitled to recover a penalty as hereinafter provided from the defendant, Aetna Insurance Company. In connection with this hold-

ing the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The buildings bearing municipal numbers 4238–52 and 4236 Florida Boulevard, Baton Rouge, Louisiana, were at all times pertinent hereto owned by the plaintiff, Florida Buildings, Inc., a Louisiana corporation domiciled in the Parish of East Baton Rouge, State of Louisiana.

2. At all times pertinent hereto the defendants, Standard Fire Insurance Company, a Connecticut insurance company, and Aetna Insurance Company, a Connecticut insurance company, were the fire and extended coverage insurers of said buildings, each of said defendants having issued a standard fire insurance policy with extended coverage covering the building bearing municipal number 4238–52, hereinafter referred to as the "large building," in the amount of $69,000, and covering the building bearing municipal number 4236, hereinafter referred to as the "small building," in the amount of $6,000, thus making a total coverage on the large building of $138,000 and a total coverage on the small building, which was used as a filling station, of $12,000.

3. The large building was composed of two sections: a small flat-roofed office section facing north on Florida Boulevard and a large auditorium-type or hangar-type section to the rear. The rear section was constructed of steel trusses built up from the foundation in the shape of an arch, making the building resemble a large hangar-type building. The small building was a flat-roofed service station building located adjacent to but not connected with the large building. The large building is 44 feet high at its highest point and measures approximately 93 feet across the front and is about 159 feet from front to rear.

4. On September 9 and 10 of 1965, during the course of the hurricane designated as "Hurricane Betsy," these buildings were damaged. There is no dispute about the fact that damage was caused by the hurricane and that such damage was covered by the extended coverage portion of the insurance policies referred to.

5. As a result of this hurricane, tremendous property damage occurred in and about the Baton Rouge area, and the many insurance companies having coverage in this area were deluged with claims which necessitated, in many instances, certain delays in adjusting or attempting to adjust and process claims.

6. Extensive damage was done to the large building. The entire east and west walls, commonly referred to as "curtain walls," were blown completely out. The ceiling was extensively damaged; the roof was damaged, and as a result of this damage, considerable water damage followed. Only minor damage was done to the small filling station building.

7. On October 15, 1965, plaintiff filed a proof of loss with both defendants claiming that the large building was a total loss and demanding the face amount of each policy, i. e., the sum of $69,000 from each defendant, and also claiming the sum of $800 for damages to the small building. Plaintiff submitted two estimates from contractors covering the cost of demolishing and rebuilding the large building, one in the amount of $129,831 and the other in the amount of $133,592.-80.

8. In October, 1965, defendants employed engineers and architects to prepare plans and specifications to *repair* the building using the existing steel framing and as much of the existing structure as they thought possible.

9. In November, 1965, the architects, Miller, Smith and Champagne, Inc., obtained two bids for the repairs called for by their plans and specifications. One was from the contracting firm of Ourso and Marionneaux Co. in the amount of $29,980, and the other was from W. J. Spano Co., Inc., in the amount of $33,369. Neither of these bids were in any way detailed or broken down into specifics or supported by any take-off sheets, but were merely proposals in letter form proposing to do the work called for by the

plans and specifications for a stipulated amount.

10. In December, 1965, plaintiff obtained a bid for *repairs* to the building from W. M. Heroman & Co., Inc. This bid was based upon an examination by the contractor of the Miller, Smith and Champagne plans and also of the original plans of the building, and was very detailed. The original bid of Heroman was in the amount of $77,633, with a supplemental bid being later submitted in the sum of $3,957.

11. On December 21, 1965, plaintiff filed this suit against the defendants seeking to recover the sum of $138,000 for total destruction of the large building, and the sum of $800 for alleged damages to the small building. Thereafter, on January 24, 1966, the defendant, Standard Fire Insurance Company, tendered the sum of $14,990, one-half of the amount of the Ourso bid, which was accepted by plaintiff with reservation of its right to litigate the balance of its claim. On January 12, 1966, the defendant, Aetna Insurance Company, tendered a like amount, i. e., $14,990, but since the tender contained an unconditional release of all claims, plaintiff refused to accept it. A year later, on January 4, 1967, Aetna again made a tender of the $14,990, this time without the unconditional release provision, and plaintiff accepted it, again with reservation of its right to litigate the remainder of its claim.

12. There is no credible evidence in this case to support the contention that the large building owned by the plaintiff was either an actual or constructive total loss as a result of the storm. The two bids in the amount of $133,592.80 and $129,831, respectively submitted by Mr. Eaton and Mr. Rackley, were based upon replacement of the entire building rather than upon repairing it, and there was no credible evidence in support of these bids to indicate that the building could not be satisfactorily repaired for much less than the bids submitted, using the original structure as a basis therefor.

13. The lowest bid submitted was that of Ourso and Marionneaux Co. in the amount of $29,989. While this bid was ostensibly intended to cover necessary repairs to the building, the Court, nevertheless, attaches little or no importance to it. This bid was obviously submitted in an amount less than $30,000 for the only reason that the contracting firm of Ourso and Marionneaux Co. were not licensed as contractors under the law of the State of Louisiana, and without a license the company could not contract for work in an amount over $30,000. Thus, the Court finds, as a fact, that this bid was not indicative of the cost of repairs needed to restore the building to its condition as of the date of the damage inflicted by the storm.

14. The next higher bid was that of W. J. Spano Co., Inc. This bid was in the amount of $33,369. The evidence shows that this bid was prepared during a 30 to 45 minute inspection of the premises and was not supported by any breakdown or itemization whatsoever. The Court finds as a fact that the reasonableness of this bid was not in any way supported by any credible evidence and in fact concludes that it is neither a serious bid nor one which reflects the amount of actual damage to the buildings involved.

15. The only serious bid submitted and the one which is supported by ample evidence is the one submitted by W. M. Heroman & Co., Inc. This company submitted an original bid in the amount of $77,633, and then submitted a supplemental bid in the sum of $3,957. The supplemental bid was for replacement of the south wall of the building, which had not been included in the original bid.

16. The Court finds, as a fact, that the need for replacement of the south wall of the building was not caused by the storm, and that thus the supplemental portion of the Heroman bid should be disallowed.

17. The primary bid of W. M. Heroman & Co., Inc. in the sum of $77,633 adequately and fairly represents the cost of repairing the building and restor-

ing it to its condition at the time the policy was issued, i. e., about one month prior to its being damaged by the storm, with one exception. The exception is that there is no allowance made in that bid for architects' fees. It is assumed from the evidence that the plans and specifications prepared by Miller, Smith and Champagne, at the instance of and apparently paid for by the defendants, are now available to plaintiff for restoration of the building. Thus, the only additional architect's fee to be incurred would be a fee for architectural supervision of the work. The plaintiff is entitled to recover, in addition to the $77,633, an amount representing the standard architect's supervision fee, based upon that figure.

18. This award will, in the Court's opinion, allow the plaintiff to restore the large building to substantially the same condition it was in at the time of the storm, and thus no further consideration need be given to the question of depreciation.

19. Proof of loss was received from the plaintiff by the defendants on October 16, 1965. The bids from Ourso and Spano were received by the defendants on November 24, 1965. On January 24, 1966, or a little over three months after receipt of the proof of loss, defendant Standard Fire Insurance Company made an unconditional tender to the plaintiff of one-half of the low bid, which was accepted by plaintiff, who reserved its right to litigate for additional recovery. The fact that this tender was made more than sixty days after receipt of proof of loss does not necessarily make Standard liable for the payment of statutory penalties on that amount. In order to be liable for statutory penalties, the refusal to pay must have been arbitrary and capricious and without probable cause. The Court finds that the failure of Standard to pay the amount admittedly due within sixty days from the receipt of the proof of loss was not arbitrary, or capricious, or without probable cause in this case but was, instead, due to an extraordinary amount of claims adjusting made necessary by a very unusual storm. The failure of Standard to pay an amount in addition to one-half of the lowest bid was not arbitrary and capricious because there was serious dispute as to whether or not any additional sums were due. Thus, the Court finds that Standard's failure to pay was not arbitrary and capricious and without probable cause and hence no penalty or attorney fees for failure to pay within sixty days should be assessed against this defendant.

20. On January 12, 1966, or a little less than three months after receipt of proof of loss, the defendant Aetna made what it claims was a tender of one-half of the lowest bid to the plaintiff. But this so-called tender of $14,990 was a conditional tender and was conditioned upon the plaintiff executing a full release of all claims for damage to the buildings. Aetna knew at that time that it owed the plaintiff *at least* the amount so tendered, and it knew that the plaintiff was claiming an amount greatly in excess of the amount tendered. Since Aetna did not dispute the fact that it owed the $14,990 tendered, it was not justified in attaching strings to that tender. Its refusal and failure to make an unconditional tender of the sum of $14,990, which it acknowledged to be due, was indeed arbitrary and capricious and without probable cause and subjected Aetna to a 12 per cent statutory penalty on that amount. The fact that a year later, on January 4, 1967, Aetna made an unconditional tender of the $14,990, which was accepted by the plaintiff, did not negate the fact that there had previously been an arbitrary and capricious refusal to pay an amount admittedly due. Thus plaintiff is entitled to recover from the defendant Aetna a penalty in an amount equal to 12 per cent of $14,990. The Court finds as a fact that serious disputes existed as to amounts that might or might not be due from Aetna in excess of the $14,990, and that hence Aetna's refusal to pay those additional amounts within sixty days was not arbitrary and capricious. The Court also finds that because of the fact that litiga-

tion was necessary whether or not Aetna had paid the $14,990 admittedly due, plaintiff is not entitled to recover any amount from either Aetna or Standard for attorney fees.

21. The only damage caused by the storm to the small filling station building was minor damage to some aluminum awnings. Since there was no evidence introduced as to the cost of repairing or replacing those awnings and since the Heroman bid includes a figure of $100 for "awning", it must be assumed that this item is for repair or replacement of the damaged awnings on the small building and thus no additional award will be made for damage to the small building.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this diversity action and venue is properly laid in the Eastern District of Louisiana, Baton Rouge Division. 28 U.S.C.A. § 1332.

2. The amount of recovery to which plaintiff is entitled under a Standard Fire and Extended Coverage insurance policy for a partial destruction of its buildings by windstorm is the amount of money necessary and required to place the buildings in substantially the same condition as they were at the time of and immediately preceding the storm that damaged them. LSA–R.S. 22:691, 22:695; Reliance Insurance Company v. Orleans Parish School Board, 5 Cir., 322 F.2d 803 (1963).

3. Both as a matter of fact and as a matter of law, the bid submitted by W. M. Heroman & Co., Inc. in his case did take depreciation into account and only contemplated repairing the building and placing it in substantially the same condition as it was immediately preceding the hurricane on September 9, 1965, and hence no further consideration need be given to the question of depreciation.

4. Plaintiff is, as a matter of law, entitled to recover from defendant, Standard Fire Insurance Company, the sum of $38,816.50, plus one-half of the standard fee for architect's supervision as provided for by the Standard Archi-tects Contract prepared and/or approved by the American Institute of Architects based upon a contract price of $77,633.

5. Plaintiff is, as a matter of law, entitled to recover from defendant, Aetna Insurance Company, the sum of $38,816.-50, plus one-half of the standard fee for architect's supervision as provided for by the Standard Architects Contract prepared and/or approved by the American Institute of Architects based upon a contract price of $77,633, together with a penalty in the sum of $1,798.80 for having arbitrarily, capriciously, and without probable cause refused and failed to tender unconditionally the sum of $14,990 within sixty days after receipt of proof of loss when said defendant knew and admitted that at least that amount was due to the plaintiff as a result of the storm damage to its buildings. LSA–R.S. 22:658.

6. The Court finds, as a matter of law, that plaintiff is not entitled to recover attorney fees from either defendant.

7. Each defendant is entitled to a credit against this judgment in the amount of $14,990, representing the amount paid to plaintiff by each defendant prior to trial.

8. The Court further finds, as a matter of law, that plaintiff is entitled to recover interest at the legal rate from the defendant, Standard Fire Insurance Company, on the sum of $14,990 from December 21, 1965, the date of judicial demand, until paid on January 24, 1966, and on the balance of this judgment from December 21, 1965, the date of judicial demand, until paid, and that the plaintiff is entitled to recover interest at the legal rate from the defendant, Aetna Insurance Company, on the sum of $14,990 from December 21, 1965, the date of judicial demand, until paid on January 4, 1967, and on the balance of this judgment from December 21, 1965, until paid. Reliance Insurance Company v. Orleans Parish School Board, 5 Cir., 322 F.2d 803 (1963).

Judgment will be entered accordingly.